matters on the docket today. The first case we're going to hear is Hayden Gateway vs. Advanced Flower, Appellate No. 25-2061. Thank you, Judge Schwartz, and may it please the Court. Alex Lummis for Advanced Flower Capital and AFC Agent. With the Court's leave, I'd like to reserve three minutes for rebuttal. That will be granted. The injunction that's on appeal enforces an oral reopening agreement in the face of a no oral modifications clause because the District Court said it wanted to ensure that the public had continued access to medical marijuana in compliance with state law. We understand that's what the judge observed, but we also ask counsel to talk to us about the fact that while it might be compliant with state law, the conduct violates federal law, and we need to know what your views are concerning our role in that process. Precisely right. And so, to be clear, we think that there's three separate grounds, the state law grounds, the irreparable harm, or other grounds, but on the illegality point specifically, the District Court's statement that enforcing the oral reopening agreement and enforcing the injunction would guarantee the public access to medical marijuana is just the sort of stamp of judicial approval that this Court said in APOTEC that is impermissible under the CSA. So that is a reason to find that they have failed to establish likelihood of success on the merits for purposes of this injunction per the Court's questions. Now, that's the only issue on appeal, at least as pertains to illegality. I must emphasize this point. The underlying loan agreement, which appellees have tried to put forward before this Court, is not on appeal because they did not seek to argue below or try to demerit the theory that the loan agreement as a whole is invalid, nor would such an agreement be proper or correct for a variety of reasons that we could get into if that were before the Court. Well, you say that the reopening agreement is the only thing before us, but the District Court found irreparable harm on the so-called unauthorized withdrawals, and that would be not predicated on the reopening agreement. It would have to be predicated on the credit agreement. Well, respectfully, they need to win on the enforceability of the oral reopening agreement because otherwise there would be a default in them asserting defenses in Pennsylvania and then having failed. The District Court found that they didn't default. He made a declaration that there was no default. Footnote, he said he wasn't going to rule on certain ones. That's something we can discuss, but you're asking us to narrowly view what happened, but that doesn't seem to address the fact that there's more than just the oral reopening agreement at issue, even on just the PR. So there is, but they need to run the table on the issues, respectfully, Judge Schwartz, and that's because a single default allows us to exercise any and all remedies. And if the oral reopening agreement is invalid, then it follows necessarily, and plaintiffs don't dispute this, and the District Court didn't dispute this, that their assertion of defenses in Pennsylvania was a default, and also their failure to notify us about their loss of their cannabis license was a default in Pennsylvania. Okay, I think Judge Fitch had some questions. Yeah, it strikes me that the reasons that we would begin to say that the oral modification is illegal would extend back to the forbearance agreement and the credit agreement. If financing marijuana, the growth and distribution of marijuana is illegal under federal law, doesn't the doctrine of illegality prevent federal courts from adjudicating any claims related to any contracts regarding that topic? If I might complicate the word financing, Judge Phipps, investing in equity is something that district courts have said might implicate the CSA and illegality principles. But loaning money to an entity that grows marijuana is not itself a violation of the CSA or anything else. And I see the skeptical look, if you'll allow me to just elaborate on this point. This actually goes back to longstanding aiding and abetting and conspiracy principles first laid out in United States versus Falcone, which is a judge-learned hand opinion, 109 Federal Second 579, if the court wants to look it up afterwards. There, the court held that simply providing sugar and distillery supplies to a known bootlegger is not itself aiding and abetting or conspiracy to violate liquor laws, because you're not sharing the actual purpose of violating the liquor laws, because you don't have a stake in the violation. But also money, all these sweeps of money were coming from the sale of marijuana. And so that would be part of, if we put our, if the court put its imprimatur on that, it would be, it would say, yes, we can also use the proceeds of marijuana activity, which itself is a violation of federal law, also is a problem, no? No, so I don't think that's right. So first off, the judicial imprimatur doctrine says that the court will not grant relief to a party that comes to the court seeking relief. We have not requested relief from the court in any respect. We're the defendants in this case. All right. You're stressing this is a negative injunction, but the injunction enforces the oral reopening agreement and the rest of the contract. So can we really understand it as a negative, just don't do anything, hands-off approach here? It looks like you're ultimately trying to enforce these contracts that are supporting growing and selling cannabis. Well, and they could raise any illegality concerns in any state foreclosure proceedings or any other court proceedings in which we would assert our contract rights. And that's would be the proper posture, which I would point out was also the central part of our irreparable harm argument, which neither they nor the district court grappled with below. Now, as to the concern that Judge Schwartz raised about us using sweeps and taking money from the account, to be clear, we don't need to seek court permission to take money from these accounts. That's a contractual right that we have. There's no difference between us taking money from this or them taking money from this account for purposes of this court. If you were to have serious concerns about the cash sweeps issue, then under the in pari delicto point, at least for the in cash sweeps point, then the proper thing to do would be to simply step out of the controversy and not grant judicial relief to one party to another. Now, I say as to the cash sweeps point- So what does that mean? If we step out, that means we would be dismissing the case? Vacating the injunction because- If we were vacating the injunction, we would also, because there's no success, ability to have success on the merits, right? Yeah, I think that would be happening. That would be a dismissal on a MUNA, right? So it probably would ultimately mean a dismissal, at least for their remaining claims. There were some claims that they brought that did not necessarily implicate the same illegality concerns that are not relevant to the preliminary injunction here. But yes, but I'm also wary that this is an appeal from a preliminary injunction. Normally, if you succeed in vacating a preliminary injunction, fingers crossed, the ultimate remedy you get isn't necessarily dismissal as well as well as vacant- Did anybody tell the district court that we had specifically, this panel had specifically requested argument on this illegality point? We know since that time, there's been other activity in the district court, including the resolution of at least a partial summary judgment motion. No, but respectfully, Your Honor, we're happy to make sure that there is a notice submitted promptly to ensure to see whether or not it affects the district court's views on anything else. And of course, if for whatever reason that were to be an issue on appeal, that the whole thing were to be dismissed, the other side could, of course, raise that argument on appeal from the summary judgment that we've already, on the partial summary judgment order that we prevailed on. Now- What would happen if the federal court declined to intervene here, just for the reasons we've been discussing? What happens? So we bring foreclosure proceedings in Pennsylvania, they assert any and all defenses they think they might have in Pennsylvania, including illegality, if they so feel like. So they would go back, they would go, they would do something in state court? Yes. And would the state court judge be able to grant relief under the same circumstances? What about federal law's role there? Yes. Apicall Biotech, the concurrence, in a footnote, notes that because it's a federal law supremacy clause type issue, the state court would absolutely be prohibited from granting relief that violates the CSA. So the same thing would happen to you, right? It would help either of you. We don't think that we're going to lose on this issue. We are trying to focus the court on sending this back to the proper state court to address this issue, because this is an improper vehicle to raise these types of concerns and declare the ill-loan agreement invalid. Again, my first question was, once we go down the road of illegality, it just doesn't seem like it stops at the oral modification. It doesn't stop at forbearance. It seems to extend all the way back to the credit agreement. Now, if you want to say, no, illegality can't touch the credit agreement, then when you carve that out, maybe that backfills so that whatever that carve-out is would then extend to the forbearance agreement and the oral modification. But I see these as dominoes. They either fall together or they stand up together. But I don't know that you can say illegality principles stop only at oral modification. We read the oral reopening agreement as going further than the loan agreement or the forbearance agreement, in that it specifically requires them to produce marijuana. That's how we understood the district court's finding. That's also how we understood the district court's public interest statement, that he wanted to grant the injunction so as to ensure they could continue manufacturing marijuana. The documents, the agreements that my colleague, Judge Phipps, just mentioned, each of them talk about the fact that the purpose of this business is to engage and grow cannabis, and that's where the money's going to come from. And this was just laden throughout all the documents. And that's not a criticism. That's just a fact. No. But there's a distinction between saying that this is an understanding that everybody knows that they are a marijuana manufacturer, which is not enough to implicate aiding and abetting liability or conspiracy liability, or for that matter, the crack house statute under the CSA. That's a separate question from whether or not there is a specific clause, because the court has to engage in a severability analysis as Apotec acknowledged. Is severability something we can consider? Does severability require something of the district court? Is there some plain text you can point us to on severability? Well, so there is a severability clause in all the forbearance agreements and the loan agreements, and they're governed by New York law. And New York law does have a strong policy in enforcing severability clauses. In favor of severability, you're saying? Yes. And I raise all this, again, because to Judge Phipps' question, perhaps Judge Phipps is right, that this is eventually going to lead to various dominoes cascading down and will affect us in the end. We're very confident that it will not. I would respectfully submit it's hard to elaborate on all the reasons we're confident we would not in 1,500 words. And that's why I'm emphasizing this is the wrong vehicle to be raising questions about the loan agreement. Certainly, it is fair for this court to say that they could raise those arguments in a state court proceeding on remand. That's our point, too. In fact, that's our central argument for why they haven't shown irreparable harm here. Normally, it is extraordinary to get an anti-suit injunction preventing a party from bringing a lawsuit in state court, which is fully capable of hearing and resolving these exact same sorts of defenses. There is no reason to preclude the state court from considering such arguments in the first instance after extensive briefing from the parties, where we can engage in the severability analysis, where we can give the court greater authorities explaining exactly what our business model is. When you said in your letter, quote, the issue, and I'm going to use a bracket of it, illegality of the loan could be addressed in subsequent judicial proceedings if AFC must exercise its UCC remedies. My first question is, what do you mean by that? And second, how does that impact our federal court's obligation to be sure it's not lending assistance to an illegal contractor? Well, the only thing this court needs to do to make sure it's not lending assistance is to determine whether or not this court should vacate the injunction or affirm the injunction, because that's the specific decretal language that this court is going to have to issue for one purpose or another. And this court doesn't have to go further on the loan agreement because, again, we're not asking the court to do anything with the loan agreement. We are not the parties who have come to court. In terms of the first question. Yeah, what does that mean? So it means that, and apologies for the ambiguity in the letter, it means that if we sue in Pennsylvania to foreclose on property, then they can raise their illegality defenses in the state action. And that is up to the state court judge to decide whether or not, because of the nature of the business, et cetera, as Judge Mady raised in his concurrence, that would be up to the state court to decide. If it thinks the supremacy clause takes action, then you're out of luck. Yes, and I see that I'm out of time, but I'm happy to elaborate on the point further, Your Honor. But yes. You've answered the question, which is, that's what I needed to know. I just want to see if Judge Beebe is. Nothing else. No, OK, well, I'll move on. Thank you very much. Thanks. Good morning. Good morning, judges. Jamie Hoxie Solano from Dynamis LLP on behalf of Hayden Gateway LLC and Block Dispensary LLC at police. To echo what was said before, we agree that this falls altogether. There is no reason, no meaningful legal distinction between the injunctive relief for the reopening agreement in Pennsylvania and the injunctive relief involving the cash sweeps, which go precisely from the credit agreement. If the court determines that this is unenforceable because, as a matter of federal law, it is illegal, then that isn't something that should be dismissed at a high level and then left to a state court to determine. The appropriate course would be to send this back to the district judge to make determinations and facts about whether the specific relief that we have requested would command or require a violation of the CSA. Right now, the preliminary injunction that's before the court does not require or command conduct that would violate the CSA. You're focusing on the specific relief, but so there's one equitable doctrine that says in para delicto, we're not going to aid by issuing an injunction, but there's a contract doctrine of illegality, which is the whole contract then would fall. Is there more for the district court to do on that piece of it? Well, respectfully, I think that the two Supreme Court decisions that kind of parsed this out, did parse out and engaged in a severability analysis. They didn't say that the contract in its entirety was unenforceable. They went piece by piece to see if we were to enforce this, if we were to say, yes, you breached this contract, you have to comply, that would be adopting or commanding a violation of federal law. Here, there are pieces of the agreements that unequivocally under the analysis of the CSA violate federal law. AFC's interest in the cash sweeps are interests where they are taking operating proceeds from cannabis sales. The foreclosure of the Pennsylvania facility, they're essentially engaging in maintaining a drug premises that would violate 21 USC 856. But there are other portions of the contract that are not violative. For example, the preliminary injunction that's before the court doesn't command any performance that would violate the CSA. If AFC were to comply with the preliminary injunction that the court put in, it does not violate the CSA. They are actually prohibited from violating the CSA by way of the injunctive order before the court. They cannot take the Pennsylvania facility, which would in turn have them maintaining or profiting from the sale of a cannabis facility, nor can they take the operating proceeds from Justice Grone's cannabis business. So under those circumstances, the preliminary injunction is actually consistent with the idea that they should not be violating the CSA and it should stay in place unless and until there is a specific finding that the relief sought or that the order at issue would command a violation of federal law. You know, it's interesting to me because we talk about severability, but also it's just that, you know, at least as I understand contract law, one of the big issues is, is there a material breach? What's material? Everyone wants to find out is this a material term and not a material term. And so when you get to a point that you've just got a material breach, a lot of people just say contract's over, right? We aren't worried about forcing compliance. We aren't worried about making the rest of it work. And so I haven't thought through it, but how do you think material breach works with severability in the sense of if we have terms that we just have to say, look, they were material to the contract, what's left of the contract after we take those out? And I just don't know that it makes sense to begin to enforce a contract and make every other piece just in place when you're like, oh, big, huge material parts are over. Normally we would just say the contract's breached and we'll pick winners and losers. We don't try to resurrect a contract when there's a material breach. So here, if some of these provisions are deemed material, should we even be looking at the severability clause? Isn't that an overextension of severability principles? Well, I think that I understand the tension, but it appears that the Supreme Court in Kaiser and in Kasuga engaged in precisely that. There was no question that the provisions at issue were material. In the Kasuga case, the entire purpose of the contract between the parties was price fixing. And that was the entire reason that the contract went into effect. And notwithstanding that that was the main point of the contract, the court said that, of course, it's not going to enforce the price fixing aspect of the contract, but it did keep the other portion of the contract, which was the sale of onions for a price. And that's notwithstanding that it's likely that that was not the purpose underlying the contract. The same is what happened in Kaiser Steel. The dissent in Kaiser Steel goes to great lengths pointing out that the provision that was declared unenforceable was a provision that had value to the party, that the party did their part and complied with their obligations under the contract. And then the argument that this was illegal was really not fair. But notwithstanding that it wasn't fair, it trumped everything. It was determined illegal and thus unenforceable as a matter of federal law. And so I guess my question is, is severability a principle? This is a little bit echoing Judge Bibas's question about illegality manifests in terms of relief that federal courts can give and illegality manifests in terms of what parties can't contract to under state law. Those Supreme Court cases, though, they weren't construing New York law, were they? And they weren't looking at severability principles under New York law, were they? Is that where we need to look for severability principles to see what's left? Or is the severability doctrine related to the federal court's power with respect to illegality? What's your thoughts on that? I think it has to be illegal as a matter of federal law. So then the severability clauses have no meaning. I think they have the severability clauses. If there was a contract that had no severability clause and a court went through and determined that a portion of that contract as a matter of federal law could not be enforced, but other portions could because they didn't violate federal law. I think that that would be an issue of federal law. And I think that you could undertake a severability analysis notwithstanding whether there was a severability term in the contract or not. Pretend, let's take our contract, sever out the illegal from the legal. And what would be left for the district court to do? I mean, here, the argument, the relief sought in the current complaint, I'm sorry, in the complaint that's in the record, which is not the amended complaint, but the relief sought is an injunction against AFC for taking the cash sweeps. That does not prohibit, that does not command conduct prohibited by federal law. It actually is the opposite. It's saying you cannot take, you cannot take the operating proceeds of the company that you're not entitled to. It also asks, I'm sorry, it also requests for damages for purposes of the breach of contract and the implied covenant of good faith and fair dealing. And it's, it prohibits AFC from taking on any relief that is inconsistent with the reopening agreement. And so... Is the reopening agreement the sole basis of this complaint? And I ask that because the unauthorized cash sweeps that were part of the preliminary injunction discussion could not be related to the reopening agreement because the reopening agreement only dealt with the foreclosure of the PA property and the promises to put forward additional cash to let it keep going before any foreclosure would occur. So if we're mistaken, let us know. But my understanding was it had to be more than the reopening agreement at issue in this complaint. It's certainly more than the reopening agreement. Essentially, the complaint is we, is our clients had a contract with AFC and there were several, they paid for a forbearance agreement. And under the forbearance agreement, AFC agreed that it would not foreclose and it would not undertake its basically secured position in our client's assets, which are cannabis assets, cannabis proceeds, cannabis facilities. Exactly. So how could we sever anything out? Like, isn't it all intertwined? What would we say? I know you were going through the complaint, but my question really had to do with, Judge Phipps was asking about the contract and severability of terms of the contract. And so, isn't it so interconnected that it would be impossible to sever? I don't believe so, Your Honor. I believe that the security, the secured interests would be illegal to say, as AFC points out, I think in its supplemental briefing, if AFC were to try to bring a claim in court and saying, we said that $500,000 could be used towards the reopening agreement, which includes operating. So we want specific performance by our clients to engage in this, then that would not be enforceable. That would be commanding illegal conduct. But here you have a credit agreement and you have a forbearance agreement that talk about financial terms and the payment, money is over and then interest is paid in and the loan principle is decreased over time. That is not illegal. That is not a violation of the CSA, particularly because we're talking about money that came from AFC. We're not talking about money that came from the cannabis operators, the cannabis companies, essentially. Are there counterclaims? Have any counterclaims been filed? I know we're on the PI, but are there counterclaims? There are not counterclaims on the original complaint. I'm trying to remember if counterclaims have been filed on the amended complaint. Because I know I'm aware, the court's aware that there's other litigation that's going on arising from these parties' relationship, but you don't have any specific memory of that? I don't have any specific memory of that, Your Honor. That's okay. I will point out that in the... I still don't know what's severable, what saves the contracts though. What would we sever out of the contracts following up on Judge Phipps' conversation? Well, I think the terms of the financial covenant of the loan would be something that could be enforceable while the secured interests would not be enforceable. The interest in cannabis, cannabis-related proceeds, the liens in cannabis would not be enforceable. And that would be similar to what happened in the two Supreme Court cases. A portion that was desirable to the parties got struck down because it was illegal, and the portion that wouldn't command a legal performance remained enforceable because it was payment for onions, or it was a payment that didn't violate the terms of... Wouldn't the court have to rewrite the contract? Because the contract, as I said to your colleague across the aisle, it's in many different ways repeats the sources of the proceeds and what the point of the business is and why the AFC wanted to finance. And the record demonstrates why your client needed to go to a particular finance company rather than the bank because the nature of the business violates federal law. So doesn't this all become so intertwined that it would be impossible to detangle? Well, I think the answer is until there's a fact-finding opportunity to flesh that out, that not only should there not be a declaration that all of this is unenforceable, but the preliminary injunction should stay in place. If the court's going to get rid of the preliminary injunction, the effect of that is going to be that AFC is going to run to state court and make whatever arguments it wants to make under state court, even though we are here in a federal forum and the argument is being raised that this is a violation of federal law. If it's a violation of federal law, it would be our request that it be very clear that that pronouncement of violation of federal law be something that would be carried over to whatever state forum AFC thinks it's going to be, you know, arguing this. I don't know that we could tell a state court what to do, but, right? Well, I think that if the party, if the issue here is that the agreement is unenforceable as a matter of federal law, then it should be determined and declared unenforceable as a matter of federal law, not an issue of, well, the federal courts can't touch this because it violates federal law, I guess is the distinction I'm making. You know, back to severability, yeah, topic du jour. Supreme Court in the New Jersey sports betting case that struck down the federal statute prohibiting sports betting addressed severability in the context of statutory provision severability, not contractual severability. And one of the things that it said, and I'm doing this a little bit from memory, was it said if there's a, if it results in a scheme that's sharply different than what Congress would have intended, then we're just not going to sever anymore. And so what bearing does that kind of standard of severability have because that relates to federal law and federal principles? Should we begin to look at the illegality doctrine as it begins to fill in severability to a contract as saying would the resulting contract be just sharply different than what the parties would have ever entered into if this was settled? And so if we use that standard, doesn't it kind of mean that there's just not severability? Well, I respectfully don't think that that would be the appropriate standard to use under the two, under Kosuga and under Kaiser. Because in both of those cases, it was conceded that the term was something that was important to the parties. In Kosuga, it was the entire purpose behind the contract. So the contract would not have existed but for the motivation that this be a price-fixing contract. And notwithstanding, the court said that it would enforce the one piece that was obviously illegal and would decline to say that the entire contract was unenforceable. But here, isn't this contract's existence only because of the business the parties have chosen, so to speak? Well, I think that this contract is, well, there's several contracts, but the financing as a whole, the relationship as a whole is a financing agreement. And so the security that AFC is trying to take and tried to take, which started this lawsuit, is illegal. But the financing is not necessarily illegal. Like, I think that that's the distinction with, that's the distinction I would make with the onions. Buying onions is not illegal, even if the whole reason you're doing it is because somebody came to you and said, I'm going to flood the market, I'm going to flood the futures market unless we enter into this agreement and we're price-fix. Let's say hypothetically, there were counterclaims brought where your adversary wanted collection on the loan. And could the district court judge say to ensure that a federal court isn't blessing this illegal, or like there's no illegality tainting this, you plaintiffs got to get money outside of the marijuana stream of income. Is that a way to kind of immunize this from being a violation of federal law? And if it is, would that be an overstep by the court? Just so I understand the hypothetical, it would be if AFC were to bring a counterclaim demanding payment under the credit agreement, could the court say, I'm going to command payment, but the payment must be outside of your operating sources? Correct. Because under this same theory that you said a financing arrangement in and of itself is not illegal, but the practical reality in this particular case is the funds to pay back during the course of the life of this loan and then afterwards would come from the sole source, which is the illegal business under federal law. I certainly think that some of the cases that have explored this and looked at the relief sought and whether the relief sought could be satisfied with non-cannabis or non-CSA violative assets would suggest that that would be appropriate. But I am not clear on the level of scrutiny that the district court would need to undertake to see if that's a realistic possibility under the hypothetical. Got it. Judge Beebs, any questions? No. Okay. All right. Thank you. Thank you, Your Honor. I'd like to start where Ms. Solano just finished and looping back as well to her comment on the illegality of foreclosure proceedings. If we're allowed to foreclose, we would be foreclosing and paying ourselves out of money that is not a marijuana asset. We don't have a security interest in marijuana plants. We don't have a security interest in any illegal property interest whatsoever. We would be foreclosing on the buildings. We would be foreclosing on the property. We would not, as Ms. Solano said, be running a marijuana business. That is not what we do. And again, there is... Even though the property, I think your adversary across the aisle said that location was a facility where illegal activity was happening and that would be a violation of 856. At this point, we'd just be selling a building where nothing's being produced right now and they'd be putting it up for an auction to see who would give us the best price. That is not illegal and that is not a violation of the crack house statute 856 either because it's not illegal to be a mere mortgagee unless you also manage or control the property and we don't manage or control the property at this time. We simply have a security interest in it. We manage or control our money and nothing else. Now, the only other illegal thing that she says the injunction prevents us from doing purportedly is exercising cash weeps. Three responses on this. First, if you accept this argument, at least narrow the injunction so that it doesn't prevent us from commencing foreclosure proceedings. That's more money at stake for us anyway, so that's what we care most about. Allow them to raise their illegality concerns in the state court proceedings. Second response, it's not illegal for us to engage in cash sweeps any more certainly than it is for them to take the money and use the money in the bank accounts to fund their business or to pay their investors. So there's an in peri delicto problem from them there, but also it's actually not illegal for us to accept money that we know derives from marijuana sales. And that goes to the USB Falcone case that I mentioned in the line of precedent based on it. Now, I'm aware that there are stray lines in opinions about CSA contracts that refer to being paid from a marijuana income stream. If you go back to those cases, it repeatedly refers to instances where people are receiving equity in the actual marijuana business rather than simply receiving money from a known drug dealer where they know that that is their only source of income. Now, perhaps... It seems like a pretty fine distinction between an equity interest in it that's not monetizable that minute and getting the same cash. It seems like a pretty fine line. But it is a distinction that US courts have adhered to for nearly a century, and it is something that we relied on when entering into these contracts. And at minimum, if the court is going to be interested in plowing new ground on it, the new ground should be plowed in a state court proceeding where these issues can be fully briefed with factual submissions about what exactly our business model is beyond 1,500 words, which isn't a problem for this court because all it needs to do is simply say that the injunction below gives a stamp of judicial approval on a legal activity because the specific reason for granting the injunction was to give people access to medical marijuana. The final point that I want to just raise as well are two final points if I can really quickly. First, I would emphasize again, we are not the parties that are seeking a purportedly illegal contract when they claim that they are themselves party to the same illegal contract. And finally, just to answer Judge Phipps's question, if I might, with the court's indulgence. Judge Phipps raised several questions about severability and whether this is a state or federal law issue. I think that I can just offer a bit of clarification on this point. Federal law does teach that you don't throw out the entire contract. If there were a contrary rule that federal law required you to throw out the entire contract that concerned illegal activity in some way, that of course would be a federal law question that would override any state law contract law principles, of course. However, federal law says you should exercise and do a severability analysis. There is then a separate state law question that if key provisions in a contract that are central to the contract are excised, does that effectively negate the bargain? That is a state law question because that comes down to the meaning of contract interpretation and the meaning of agreements. And that's the issue that we would respectfully ask the opportunity to brief in the proper forum, not on this posture on a preliminary. What would be the severable? If we thought this contract was infected by a possibility of violating the CSA, how would these contracts be cured so that a federal court could enforce them? Of course, first, we loan them money. They can pay us back money. They can use it using money from marijuana. They can use it from other funds. There is nothing illegal or contrary to the CSA policy from doing that. Not a single court has held otherwise. Nothing illegal about using drug money to pay off a financing agreement that's allowing the company to continue, don't you? That sounds like money laundering, no? No, it's not money laundering. That's not money laundering. It's not in furtherance of the promotion of a specified unlawful activity under 1956. An entity that is, to my knowledge, there has actually not been any prosecutions of any entity or any courts or prosecutors that have taken the position that simply receiving- Prosecutorial discretion is not the test for illegality though, right? Marijuana has been under prosecuted. We all know that. We're looking at this from a judicial perspective of what's illegal under federal law. And Judge Schwartz just asked you, isn't that money laundering? And your answer is no one's been prosecuted for it. Nice, but not dispositive. Respectfully, Judge Schwartz, that's not fully, that's not- First, marijuana hasn't always been under prosecuted. There are decades where there were ample prosecutions. I'm not aware of a single one in which a person was prosecuted for merely receiving the money that was received from drugs simply because they knew about that. It also goes again to the line of precedent I mentioned, U.S. v. Falcone. There's other judge opinions from the 1980s as well. But these are harder questions from this about the scope of the CSA. And again, I respectfully submit, these are things that can and should be amply briefed rather than us making references to money laundering generally, rather than engaging in a thorough analysis of presidential opinions. That's our only point here. The injunction below- Can I get back to severability? Of course. The severability cases that people are looking at, ones from the late 50s, ones from the early 80s. The Supreme Court's most recent statement was on statutory severability, but that's from around 2018 or 2019. And it seems to suggest that if the scheme is sharply different than what Congress intended without a provision, then we're just going to throw the whole thing out. That's modern severability in the statutory context. Should we really ignore that standard when we're looking at- And that was a marked change from prior severability analyses. Should we really ignore that decision and say, nope, we're just going to have our blinders on? This is contractual severability despite the interest of federal legality concerns. Well, two points, Judge Phipps. First, that's a fully an inquiry that is fair for the state court to engage in a proper proceeding and the proper vehicle with ample briefing. But to answer directly, though, I think that there is a distinction between the statutory context and the contract context. There's a reason to throw out the whole thing as part- to throw out the whole thing when you're dealing with a statute, because it's about trying to further congressional desire, understand what Congress would have wanted effectively if you were to take out the core aspect of a law. And that, of course, is going to raise a federal question. And so it's fully appropriate for the federal court to devise precedents along these lines. This is a little different, though. In this context, you are declining to enforce particular provisions that would undermine the federal policy of propagating violations of the CSA. Now, again, we don't think we are violating the CSA. We firmly, firmly maintain that. But set that aside for a second. If the court disagrees, then the standard, as the Supreme Court said before, but also the Sixth Circuit emphasized in Hemlock, is you have to draw a balance between ensuring that the court is not giving sanction to illegal activity while also ensuring that people are not receiving improper windfalls. Here, there is a very simple court way to do that. Take away the injunction that's designed to guarantee people medical marijuana, but don't give the other side an improper windfall by allowing them to walk away with $100 million of our money without a security interest in the property, where there's nothing wrongful about us having that security interest, given especially that they will probably just use the $100 million to grow more marijuana. We want to use it to pay ourselves back so that we are no longer, so that we can deal with these losses and move on with our business. All right, counsel, thank you very much. Thank you very much. The court appreciated the arguments we received from counsel today were excellent. We'd ask that the transcript of this argument be prepared and we ask the sides to please split it. And we thank you.